UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
J.R.R.,

                    Petitioner,

        - against -

KENNETH GENALO, Acting Director of U.S.
Immigration and Customs Enforcement, *et al.*,

                    Respondents.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-1245 (PKC)

PAMELA K. CHEN, United States District Judge:

On March 3, 2026, Petitioner J.R.R.[1] filed an emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Emergency Pet. Writ. Habeas Corpus ("Pet."), Dkt. 1.) He argues that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act. (*Id.* ¶¶ 7, 121.) The Court agrees. For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately.

## BACKGROUND

Petitioner J.R.R. is a 24-year-old asylum seeker from El Salvador who entered the United States at age 17. (*Id.* ¶¶ 1, 14, 21.) He was detained by the Department of Homeland Security ("DHS") when he arrived in the United States in 2019 and was placed in removal proceedings. (*Id.* ¶ 1.) Because Petitioner was an unaccompanied minor, DHS transferred him to the custody

---

[1] Petitioner was granted leave to proceed under a pseudonym. (Order to Show Cause, Dkt. 6, at 1.)

of the Office of Refugee Resettlement ("ORR").[2] (*Id.*) ORR subsequently released him into the care of a family member pursuant to a "Sponsor Care Agreement." (*Id.*) Since then, Petitioner has lived in Long Island, New York. (*Id.* ¶ 2.) He is the primary supporter of his family, including his partner and their 20-month-old son. (*Id.* ¶¶ 2, 27.)

Petitioner has approved Special Immigration Juvenile Status ("SIJS"), which provides him with a pathway to lawful permanent residence. (*Id.* ¶¶ 1, 3–4; Pet'r's Reply ("Reply"), Dkt. 10, at 2.) Petitioner was previously granted deferred action, a form of temporary protection from removal, based on his SIJS. (Pet., Dkt. 1, ¶¶ 4, 7; I-797 Grant of Deferred Action, Dkt. 1-1.) He also has an application for asylum that has been pending before U.S. Citizenship and Immigration Services ("USCIS") since 2020, and he cannot be removed while that application is pending due to his membership in the *J.O.P v. Department of Homeland Security* settlement class. (Pet., Dkt. 1, ¶¶ 3, 53–58; *J.O.P.* Settlement Agreement, Dkt. 1-4); *see also J.O.P. v. Dep't of Homeland Sec.*, 779 F. Supp. 3d 570, 575–76 (D. Md. 2025) (describing the settlement agreement and the court's certification and approval thereof). Due to his SIJS, pending asylum application, and *J.O.P.* class member status, an Immigration Judge terminated Petitioner's removal proceedings in August 2025, without any opposition from DHS. (Pet., Dkt. 1, ¶ 5; Immigration Judge Order, Dkt 1-3.)

Petitioner was arrested for an incident that took place on February 6, 2026,[3] and charged with a class B misdemeanor under New York Penal Law Section 245.00(a) ("public lewdness"). (Pet, Dkt. 1, ¶ 28.) At his arraignment on March 2, 2026, he was told to go to the Glen Cove City Police Department the following day to have his fingerprints taken. (*Id.*) When he did so, he was

---

[2] DHS was required to transfer Petitioner to ORR custody under the Trafficking Victims Protection Reauthorization Act of 2008. 8 U.S.C. § 1232(b)(1).

[3] The date of Petitioner's initial arrest is unclear from the petition. (*See* Pet., Dkt. 1, ¶ 28 ("Mr. R. was arrested for an incident that took place on February 6, 2026.").)

apprehended, arrested, and detained by ICE. (*Id.*) Later that day, March 3, 2026, he filed this Petition. (*See generally id.*) At the time, he was detained at the Nassau County Correctional Center in East Meadow, New York, a temporary staging facility for ICE detainees. (Resp'ts' Ltr., Dkt. 7, at 1.) In addition, by letter dated March 3, 2026, USCIS abruptly terminated Petitioner's deferred action; Petitioner's partner received that letter on or about March 9, 2026. (Reply, Dkt. 10, at 2.)

On March 6, 2026, this Court entered an order to show cause directing Respondents to show cause, in writing, "why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released." (Order to Show Cause, Dkt. 6, at 1.)[4] Respondents filed their response on March 10, 2026. (Resp't's Resp. to Order to Show Cause ("Resp."), Dkt. 9.)

## DISCUSSION

Respondents concede that "[t]his case turns on ICE's statutory detention authority and whether Petitioner is entitled to a bond hearing," and that the Court "has previously ruled on these central legal issues" in *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026), and *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC), 2026 WL 323040 (E.D.N.Y. Feb. 6, 2026)—both of which rejected the same arguments Respondents make here. (Resp., Dkt. 9,

---

[4] The Order to Show Cause also restrained Respondents from transferring Petitioner to a facility outside of this District. (Order to Show Cause, Dkt. 6, at 2.) Later that day, Respondents filed a letter informing the Court that ICE had transferred Petitioner to the Delaney Hall Detention Facility ("Delaney Hall") in Newark, New Jersey, approximately half an hour after the Court issued the Order to Show Cause. (Resp'ts' Ltr., Dkt. 7, at 1.) Respondents requested permission to transfer Petitioner to, and detain him at, 26 Federal Plaza in New York City. (*Id.* at 1–2.) The Court instead authorized Petitioner's continued detention at Delaney Hall rather than approving his transfer to 26 Federal Plaza, and ordered that ICE "**not** transfer Petitioner again during this action unless directed by the Court." (3/09/2026 Am. Dkt. Order.) The Court retains jurisdiction over this matter despite Petitioner's transfer outside this District. *See Ozturk v. Hyde*, 136 F.4th 382, 391–92 (2d Cir. 2025) (explaining that jurisdiction over an immigration habeas petition is with the district of confinement at the time the petition is filed, and petitioner's subsequent transfer to another district does not deprive the court of jurisdiction).

at 1, 4.)[5]  Respondents "acknowledge that these decisions would control the result in this case" if the Court adheres to its prior conclusions. (*Id.* at 4.)[6]

The Court adheres to its prior reasoning and holds that Petitioner, who was already in the country when ICE arrested him, cannot be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)"). Section 1225(b)(2)(A) requires mandatory detention of noncitizens "seeking admission" while their removal proceedings are pending (absent certain exceptions inapplicable here).[7]  8 U.S.C. § 1225(b)(2)(A); *accord Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (explaining that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," and, in contrast, authorizes the Government to detain "certain aliens *already in the country* pending the outcome of their

---

[5] The Court has also adhered to the same or similar reasoning in several other cases. *See Figueroa Ocampo v. Noem et al.*, No. 26-CV-0999 (PKC), 2026 WL 587643 (E.D.N.Y. Mar. 3, 2026); *Colindres v. Tellez et al.*, No. 26-CV-0663 (PKC), 2026 WL 509493 (E.D.N.Y. Feb. 23, 2026); *Ambroladze v. Maldonado et al.*, No. 26-CV-0473 (PKC), 2026 WL 295405 (E.D.N.Y. Feb. 4, 2026); Order Dismissing Case, *Cordova Vera v. Tellez et al.*, No. 26-CV-0018 (PKC) (E.D.N.Y. Jan. 27, 2026); *Galeas Miranda v. Maldonado et al.*, No. 25-CV-6882 (PKC), 2026 WL 25405 (E.D.N.Y. Jan. 5, 2026).

[6] Again, the Court appreciates Respondents' brevity as part of their desire to "conserve judicial and party resources." (Resp., Dkt. 9, at 1.) Nonetheless, Respondents' decision to continue making these arrests and detaining noncitizens who were already in the country pursuant to a statutory interpretation that has been almost universally rejected by district courts in this Circuit—rather than waiting for the Second Circuit to weigh in on the relevant legal questions—has exacted an unnecessary and avoidable toll on the resources of the judiciary and Respondents themselves. *See Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), --- F. Supp. 3d ----, 2025 WL 3295903, at *13–14 (S.D.N.Y. Nov. 26, 2025) (documenting overwhelming rejection of Respondents' arguments in this Circuit, beginning in the summer of 2025).

[7] Specifically, mandatory detention does not apply if the noncitizen is "clearly and beyond a doubt entitled to be admitted," *see* 8 U.S.C. § 1225(b)(2)(A), or if the Secretary of Homeland Security discretionarily and temporarily paroles them from custody for "urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (explaining that the "express exception to detention" under 8 U.S.C. § 1182(d)(5)(A) "implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released" under the statutory scheme).

removal proceedings under §§ 1226(a) and (c)" (emphasis added)). The overwhelming majority of courts in this District and across the country have found that noncitizens like Petitioner—who were detained by ICE after living in the United States for years—are not "seeking admission" and therefore cannot be detained pursuant to Section 1225(b)(2)(A). *See, e.g.*, *Barco Mercado v. Francis*, --- F. Supp. 3d. ----, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *id.* at *13–14 (collecting cases).

Respondents' invocation of Section 1225(b)(2)(A) is particularly puzzling here, where Petitioner *has no removal proceedings pending* and in fact *cannot be removed* due to his membership in the *J.O.P.* settlement class. (*See* Pet., Dkt. 1, ¶¶ 3, 5, 7, 25–26, 40–48, 53–58.) If Petitioner were subject to detention under Section 1225(b)(2)(A) until the end of his removal proceedings, his detention would be indefinite, perhaps permanent, and he would have received absolutely no notice or opportunity to be heard. To say that that result "would raise a serious constitutional problem" would be an understatement. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Castro-Vasquez v. Thompson*, No. CV H-25-5164, 2026 WL 206761, at *5 (S.D. Tex. Jan. 27, 2026) (granting habeas petition of *J.O.P.* class member with pending asylum claim because he was detained "with no indication of any end point"); *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 3152847, at *3 n.10 (D. Mass. Nov. 12, 2025) ("[T]he *J.O.P.* Settlement Agreement is striking evidence that Petitioner's removal is apparently neither imminent

5

nor inevitable—indeed, it is unclear whether DHS's moving to recalendar Petitioner's removal proceedings is even consistent with the *J.O.P.* Settlement Agreement—making the reasonableness of related detention constitutionally suspect.").

In sum, Respondents are detaining Petitioner under the wrong statute, without any individualized custody determination, prior notice, or an opportunity for Petitioner to be heard. That is unconstitutional. Respondents have unacceptably and inexplicably violated Petitioner's due process rights. Accordingly, Petitioner must be immediately released.[8]

Additionally, the Court is concerned about the abrupt revocation of Petitioner's deferred action and how that revocation could impact his work authorization. *See Garcia Lanza v. Noem*, --- F. Supp. 3d ----, 2026 WL 585130, at *7–8 (E.D.N.Y. Mar. 3, 2026) (holding that similar revocation of deferred action was both arbitrary and capricious and unconstitutional); *id.* at *11 (vacating purported revocation of the petitioner's deferred action and work authorization). The Court therefore grants Petitioner thirty (30) days to file an amended petition, if he so chooses, addressing this issue.

---

[8] Given that Petitioner was not afforded due process prior to his re-detention, the appropriate remedy is release, not an order directing Respondents to give Petitioner a bond hearing. *See Yao v. Almodovar*, No. 25-CV-9982 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so."); *id.* at *12 (compiling cases holding the same); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in the case in light of the constitutional violations suffered).

## CONCLUSION

The Emergency Petition for Writ of Habeas Corpus, (Pet., Dkt. 1), is GRANTED. Respondents are ordered to release Petitioner from custody immediately and no later than within 24 hours of this Order. Respondents are ordered to release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty. Respondents are further directed to return to Petitioner any and all funds or property seized from Petitioner at the time of his arrest. Respondents are directed to certify compliance with the Court's Order by filing a letter on the docket no later than 9:00 p.m. tomorrow, March 12, 2026.

The Court further orders that Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court. Petitioner must not be re-detained by Respondents without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner is removable, (*see J.O.P.* Settlement Agreement, Dkt. 1-4), and that Petitioner's re-detention is authorized under a statutory authority other than Section 1225(b)(2)(A).

Petitioner is granted thirty (30) days to file an amended petition, if he so chooses, addressing the revocation of his deferred action (and work authorization, if applicable). If an amended petition is not filed within 30 days, the Court will direct the Clerk of Court to enter judgment in this case.

Any application for attorney's fees and costs under the Equal Access to Justice Act will be held in abeyance pending the conclusion of all proceedings in this matter. *See* 28 U.S.C. § 2412(d)(1)(B) (authorizing fees application under Equal Access to Justice Act to be filed within 30 days of final judgment).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 11, 2026
      Brooklyn, New York